**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**                                        **101 West Lombard Street**
**Douglas R. Miller**                                    **Baltimore, Maryland 21201**
**United States Magistrate Judge**          **MDD_DRMChambers@mdd.uscourts.gov**
                                                                **(410) 962-7770**

April 30, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:     *William C. v. Frank Bisignano, Commissioner, Social Security Administration*
        Civil No. 25-1636-DRM

Dear Counsel:

On May 21, 2025, Plaintiff William C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent.  *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 11, 13 and 14). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on June 25, 2021, and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 3, 2021, alleging a disability onset of January 1, 2012. Tr. 22. Plaintiff's claims were denied initially and on reconsideration. Tr. 22. On March 5, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 22. Following the hearing, on April 8, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 33-34. The Appeals Council denied Plaintiff's request for review, Tr. 6-11, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

---

[1] 42 U.S.C. §§ 301 et seq.

*William C. v. Bisignano*
Civil No. 25-1636-DRM
April 30, 2026
Page 2

§§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2012." Tr. 24. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "attention deficit hyperactivity disorder, bipolar disorder, major depressive disorder, agoraphobia/anxiety, and mild intellectual disability." Tr. 25. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "mild asthma, dyslipidemia, and a bee sting allergy, and obesity since 2021." Tr. 25. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the individual can understand, remember and/or carry out simple instructions; can use judgment to make simple work-related decisions; can deal with occasional changes in a routine work setting; cannot perform work requiring a specific production rate (such as assembly line work or work that requires hourly quotas); and finally, the individual can have no contact with the public and no more than occasional interaction with co-workers and supervisors (once the job is learned and duties are assigned) and once work is assigned it should be able to be performed primarily without working in coordination with other employees.

Tr. 27. At steps four and five, the ALJ determined that Plaintiff was unable to perform past relevant work as a fast-food cook, but he could perform other jobs that existed in significant numbers in the national economy such as hand packager, sweeper, and marker. Tr. 32-33. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 33.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and

*William C. v. Bisignano*
Civil No. 25-1636-DRM
April 30, 2026
Page 3

rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    <u>ANALYSIS</u>

Plaintiff raises one argument on appeal, specifically that the ALJ did not include the required narrative discussion to support the conclusion in the RFC that Plaintiff could not perform "work 'requiring a specific production rate (such as assembly line work or work that requires hourly quotas).'" ECF No. 11 at 9. Plaintiff argues that the ALJ mentioned the restriction only once in the decision with no other context or rationale for how it would accommodate plaintiff's limitations, even though none of medical records or opinions stated this restriction would be appropriate, and that the ALJ stated the restriction as a conclusion without explaining how Plaintiff would or would not be capable of performing in such an environment. ECF No. 11 at 10-12.

In response, Defendant counters that "the ALJ's discussion support[s] his conclusion." ECF No. 13 at 10. Defendant recaps the ALJ's discussion of the record evidence in his decision. ECF No. 13 at 11-13. Defendant argues that the ALJ's discussion of the evidence "indicated how the [RFC] accounted for Plaintiff's proven limitations," and that Plaintiff does not show that the restrictions were insufficient to account for his impairments. ECF No. 13 at 13-14. Defendant contends that the restriction "has sufficient detail and context," and that this Court has previously upheld similar RFC restrictions for impairments in concentration, persistence and pace ("CPP) similar to Plaintiff's, so "there is no guesswork involved in making the connection." ECF No.13 at 14-17. Defendant argues that the ALJ defined the restriction "further by including 'such as on an assembly line or work that involves hourly quotas.'" ECF No. 13 at 18. Defendant adds that the ALJ "largely adopted" the state agency psychologist's opinion which "provides a clear bridge between the evidence and the ALJ's conclusions," ECF No. 13 at 18, and the ALJ provided greater restrictions than those recommended by the state agency medical experts. ECF No. 13 at 19. Finally, Defendant contends that "Plaintiff's brief does not point to evidence that he cannot perform work within the confines of the RFC finding," nor does Plaintiff argue that a more detailed explanation would change the outcome, so remand is unwarranted. ECF No. 13 at 19-20.

Plaintiff replies that Defendant's argument attempts to supply reasoning that the ALJ did not, and to supply a post hoc justification the ALJ never gave for the production-rate restriction accommodating an impairment. ECF No. 14 at 2-3. Plaintiff adds that even assuming the restriction were sufficiently defined and similar restrictions had addressed similar impairments in other cases, the ALJ never analyzed how it would accommodate Plaintiff's limitations. ECF No. 14 at 4.

Notably, Plaintiff does not challenge the definition, or sufficiency thereof, of the phrase "production rate." Instead, Plaintiff challenges only the ALJ's lack of narrative discussion about this restriction. ECF No. 14 at 4. ("The defect Plaintiff identified is not ambiguity in phrasing, but rather it is the absence of analysis.") *Id*.

A claimant's RFC represents "the most [they] can still do despite [their] limitations."  20

*William C. v. Bisignano*
Civil No. 25-1636-DRM
April 30, 2026
Page 4

C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

"[O]nce an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020). However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017).

Here, at step three, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 26. As support for this determination, the ALJ noted that Plaintiff's test scores "showed low average processing speed and put him at the low range of cognitive ability, upon mental status evaluation, [but that] he had normal concentration." Tr. 26. The ALJ observed, however, that "at the hearing, he responded appropriately to questions posed to and demonstrated adequate concentration and attention while testifying, recalling information, and responding to questions during the course of the hearing." Tr. 26. Moreover, during "mental status examinations, the claimant was always alert and fully oriented and no significant deficiencies in, attention, fund of knowledge, or concentration abilities were documented." Tr. 26. The ALJ also noted that Plaintiff "is independent in activities of daily living and can pay bills, handle banks accounts, help care for his minor child, perform some chores, and play video games." Tr. 26.

*William C. v. Bisignano*
Civil No. 25-1636-DRM
April 30, 2026
Page 5

Elsewhere in the ALJ's decision, after detailing the record evidence, the ALJ concluded that Plaintiff's "allegations as to the intensity and limiting effects of his mental impairments are not fully consistent with the medical evidence of record." Tr. 30. The ALJ added that Plaintiff's "impairments and symptoms would cause some limitations in his ability to perform work activity," but that they do not preclude Plaintiff "from performing the limited range of work activity prescribed in the residual functional capacity." Tr. 30. Specifically, the ALJ found Plaintiff "capable of work with simple instructions, simple work-related decisions, occasional changes in a routine work setting, no specific production rate, no contact with the public, no more than occasional interaction with co-workers and supervisors, and work that is primarily without working in coordination with other employees." Tr. 30-31. However, the ALJ did not state which limitation the "no specific production rate" restriction was intended to accommodate, nor did the ALJ state which restriction was intended to accommodate Plaintiff's moderate CPP limitation.

Nor did the ALJ assign persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions, as permitted by *Sizemore*. After concluding that Plaintiff had a moderate CPP limitation, in the RFC the ALJ limited Plaintiff to "remember and/or carry out simple instructions; can use judgment to make simple work-related decisions; can deal with occasional changes in a routine work setting; cannot perform work requiring a specific production rate (such as assembly line work or work that requires hourly quotas." Tr. 27. However, the ALJ did not explicitly base these mental RFC provisions on any opinions contained in the record. *See* Tr. 28-32. Of the three provider opinions the ALJ discussed in the RFC assessment, the ALJ assigned "not persuasive" value to two, one state agency medical consultant opinion and one outside provider letter, both of which the ALJ found inconsistent with prior treatments, examination results, and findings. Tr. 31-32. The ALJ assigned "persuasive value" to the portion of another state agency medical consultant opinion that concluded Plaintiff had moderate limitations, including in CPP. Tr. 31. However, the ALJ assigned "not persuasive" value to the portion of that same opinion which limited Plaintiff to 1-2 step tasks, as "non consistent with evidence" that Plaintiff "is capable of performing multistep tasks in past work and his reporting of doing such things as cooking 'nice meals,' doing laundry, cleaning, paying bills, and handling finances." Tr. 31; *cf. Sizemore*, 878 F.3d at 80-81 (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight").

Although the ALJ appropriately looked to the objective medical evidence of record in reaching the RFC determination, it is unclear how the cited evidence supports the production rate provision at issue. The "logical explanation" for an RFC finding is "just as important as" citing the evidence that reinforces that finding. *Thomas*, 916 F.3d at 311. When an ALJ identifies evidence to support a conclusion but fails to "build an accurate and logical bridge" from the evidence to the conclusion, the ALJ's finding cannot be meaningfully reviewed. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Here, the ALJ failed to explain how the evidence supports the conclusion that Plaintiff could follow simple instructions, make simple work-related decisions, but could not perform work requiring a specific production rate, and whether and how

*William C. v. Bisignano*
Civil No. 25-1636-DRM
April 30, 2026
Page 6

that restriction accommodated Plaintiff's limitations.  The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of Plaintiff's RFC.

But this conclusion does not end the Court's inquiry. In reviewing SSA decisions, the Court applies a harmless-error standard.  *See Patterson*, 846 F.3d at 658.  "An error is harmless 'when it is inconceivable that a different administrative conclusion would have been reached absent the error.'" *Krysten S. v. Bisignano*, DRM-24-2943, 2025 WL 2144964, at *5 (D. Md. July 28, 2025) (quoting *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009)). Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential.

For the reasons discussed above, it is unclear how the ALJ determined that a production rate limitation was necessary.  Nevertheless, the Court cannot conclude that the lack of explanation for this pace limitation amounts to reversible error. To the extent that a pace limitation was necessary at all, the ALJ adopted an RFC provision that was *more* restrictive than anything suggested within the record. *Mira M. v. Comm'r, SSA*, SAG-17-2333, 2019 WL 285956, at *3 (D. Md. Jan. 22, 2019) (finding harmless error "because it was to [p]laintiff's benefit that the ALJ included a more restrictive RFC" than the restrictions suggested by the providers). Additionally, "Plaintiff does not argue that he cannot perform 'even non-production-type work' because of his CPP difficulties." *Ian B. v. Kijakazi*, No. 22-2486-BAH, 2023 WL 5608005, at *4 (D. Md. Aug. 30, 2023) (citing *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016), finding that where a specific restriction facially addresses a moderate CPP limitation, "i.e., a restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ," absent some showing the claimant "cannot perform even non-production-type work because of his or her particular CPP deficits."). Plaintiff also fails to explain how a more detailed explanation of either pace or the mental RFC might change the outcome of this case.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. Sept. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis).  For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability. Thus, the ALJ's error was harmless. *Kersey*, 614 F. Supp. 2d at 696. The Court will therefore affirm the ALJ's decision.

## V.   **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

*William C. v. Bisignano*
Civil No. 25-1636-DRM
April 30, 2026
Page 7

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge